UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PROTO ADAME, JOSE HERNANDEZ, NICHOLAS VARGAS-CATREJON, and FRANCISCO LOPEZ )<br><br>Plaintiffs, )<br><br>and )<br><br>BITCO GENERAL INSURANCE CORP., )<br><br>Intervening Party, )<br><br>v. )<br><br>MERIDIA EXP LLC, CSX CORP., CSX TRANSPORTATION, INC., THOMAS EMMANUEL, METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, JAMISON CONSTRUCTION LLC, CECIL JAMISON, BERKLEY INSURANCE COMPANY, and CARL SIMS, )<br><br>Defendants. ) | Case No. 3:17-183<br>Judge Aleta A. Trauger |

## MEMORANDUM & ORDER

Pending before the court are six motions. First, there are five unopposed Motions to Dismiss: 1) a Motion to Dismiss filed by Jamison Construction LLC, Cecil Jamison, and Carl Sims (collectively "the Jamison Defendants") (Docket No. 16); 2) a Motion to Dismiss filed by Berkley Insurance Company ("Berkley") (Docket No. 18); 3) a Motion to Dismiss filed by CSX Corporation (Docket No. 24); 4) a Motion to Dismiss filed by CSX Transportation, Inc. ("CSXT") and CSX Corporation (collectively, the "CSX Defendants") (Docket No. 26); and 5) a Motion to Dismiss filed by the Metropolitan Government of Nashville and Davidson County ("Metro") (Docket No. 28). Next, there is a pending motion for Sanctions against the plaintiffs'

1

counsel, Joel R. Bellis, filed by Metro. (Docket No. 33.) For the reasons discussed herein, all of the pending motions will be granted.

## BACKGROUND & PROCEDURAL HISTORY

The plaintiffs filed this personal injury action on January 27, 2017 based on allegations that they were injured while working for defendant Jamison Construction, Inc. ("Jamison Construction"). (Docket No. 1.) According to the Complaint, in August of 2015, the Tennessee Department of Transportation ("TDOT") contractually retained Jamison Construction to repair TDOT bridges, so as to prevent damage to the neighboring property of the CSX Defendants, and the contract provided that certain safety measures for the project would be overseen by the CSX Defendants. On January 30, 2016, the Complaint alleges, the plaintiffs were suspended on a scaffold by Jamison Construction foreman, defendant Carl Sims, when defendant Thomas Emmanuel, driving a truck for Meridia EXP LLC ("Meridia"), crashed into the scaffolding, causing severe physical injuries and emotional distress to the plaintiffs. According to the Complaint, Mr. Sims knew the scaffolding was damaged and unable to carry the amount of weight it was holding, and he acted in violation of the TDOT contract and the safety regulation plans for the jobsite. The Complaint further alleges that CSX Transportation, Jamison Construction, and the TDOT all failed to properly supervise Mr. Sims and the jobsite to ensure compliance with the requisite safety control plan and other applicable safety regulations. In addition, the Complaint alleges that Mr. Emmanuel was driving negligently at the time and that he was negligently supervised by Meridia in being permitted to drive for too many hours consecutively.

While Metro is named as a defendant, the Complaint lacks any explanation of Metro's role in this action. There are no factual allegations raised against Metro, nor any legal theories

asserted for Metro's liability in this matter, other than the fact that the events giving rise to this action took place within the city of Nashville.

The only allegation in the Complaint involving Berkley is the allegation that Berkley acts as a surety to the performance and payment bonds of the Jamison Defendants under their contract with the TDOT.

According to the Complaint, the plaintiffs are all residents of Tennessee, as are Jamison Construction and Cecil Jamison. The remaining defendants, other than Metro, are identified as having residence in various other states, with the exception of Carl Sims, whose residence is not indicated.

The Complaint brings claims against all defendants for common law negligence *per se* under Tennessee law. The Complaint also brings claims against the CSX Defendants for premises liability, strict liability, and violation of the Federal Employer's Liability Act, 45 U.S.C. § 51 ("FELA"). It further brings a claim against Jamison Construction, Cecil Jamison (an agent of Jamison Construction), and Berkley for breach of the TDOT contract, to which the plaintiffs allege they are third-party beneficiaries. Finally, the Complaint brings claims against Mr. Sims for negligent and intentional infliction of emotional distress. The Complaint seeks compensatory and punitive damages.

On April 6, 2017, the Jamison Defendants filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) (Docket No. 16), along with a Memorandum in support (Docket No. 17). The Jamison Defendants argue that the claims against them are barred under Tenn. Code Ann. § 50-6-108, which states that the Tennessee Workers' Compensation Law provides the

exclusive remedy for personal injury claims by an employee against his or her employer, and bars all other claims under Tennessee tort or contract law.[1]

On April 10, 2017, Berkley filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) (Docket No. 18), along with a Memorandum in support (Docket No. 19), arguing that the allegations in the Complaint involving Berkeley consist solely of the allegation that Berkeley acted as a surety with respect to the Jamison Defendants' performance under the TDOT contract. Berkley asks the court to take judicial notice of the fact that such a surety relationship gives rise to only limited liability for Berkley – namely, liability to the TDOT in the event that the Jamison Defendants do not fulfill their contractual obligations – but does not give rise to general liability for Berkley for all claims that may arise out of the Jamison Defendants' actions in carrying out their contractual obligations. Accordingly, Berkley argues that the allegations in the Complaint do not support a claim against Berkley in contract or in tort.

On April 12, 2017, the court granted a Motion to Intervene by BITCO General Insurance Corporation ("BITCO"), a provider of workers' compensation insurance for Jamison Construction. BITCO has provided (and continues to provide) certain workers' compensation benefits to the plaintiffs in connection with the incident giving rise to this action. (Docket No. 20.) On the same day, BITCO filed an Intervenor Complaint, seeking to recover from the defendants all past and future benefits paid by BITCO to the plaintiffs pursuant to workers' compensation. (Docket No. 21.)

---

[1] The Jamison Defendants note the exception to this rule for torts that are intentional (meaning that a defendants acted with an intent to *harm*, rather than knowingly permitted a dangerous condition to exist or willfully violated a safety regulation), citing *King v. Ross Coal*, 684 S.W.2d 617 (Tenn. App. 1984). The Jamison Defendants argue, however, that, while the Complaint makes the summary allegation that the Jamison Defendants acted intentionally, there are no specific allegations to support a finding of intentionality that would meet the standard for the exception to Section 50-6-108 and, therefore, no such intentional tort claim has been sufficiently pled.

On April 21, 2017, CSX Corporation, a parent of subsidiary CSXT, filed a Motion To Dismiss for lack of personal jurisdiction under Rule 12(b)(1) (Docket No. 24), along with a Memorandum in support (Docket No. 25). CSX Corporation argues that it is a Virginia corporation with its principal place of business in Florida and that it lacks sufficient contacts with the state of Tennessee to give rise to general personal jurisdiction, and did not purposely avail itself of doing business in Tennessee so as to give rise to specific personal jurisdiction here.[2]

On the same day, the CSX Defendants filed a joint Motion to Dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6) (Docket No. 26), along with a Memorandum in support (Docket No. 27). The CSX Defendants argue that the plaintiffs have failed to state a claim with respect to the only federal law claim at issue in the case – the claim against the CSX Defendants for violation of the FELA – and the Complaint otherwise lacks diversity jurisdiction, so there is no ground for subject matter jurisdiction in federal court. According to the CSX Defendants, they cannot be liable to the plaintiffs under the FELA because they never employed the plaintiffs, nor are there any allegations in the Complaint that they did so.

Also on April 21, 2017, Metro filed a Motion to Dismiss for failure to state a claim under Rule 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1) (Docket No. 28), along with a Memorandum in support (Docket No. 29). Metro argues that the claims against it have

---

[2] This motion does not appear to reject the possibility that personal jurisdiction may be appropriate over CSXT, which apparently owns or operates the railroad property that was adjacent to the jobsite at issue. This motion only advances CSX Corporation's argument that such jurisdiction does not extend to CSX Corporation as the parent company, in light of its own complete lack of contact with the state of Tennessee.

been insufficiently pled because the Complaint contains no factual allegations of wrongdoing by Metro and no legal theories of liability against Metro.

On May 25, 2017, Metro filed a Motion for Sanctions (Docket No. 33) along with a Memorandum in support (Docket No. 34), again arguing that the Complaint does not make any factual allegations or assert any theories of liability with respect to Metro and, therefore, the claims against Metro are frivolous and wholly without merit. Accordingly, Metro seeks sanctions from the plaintiffs' counsel, Joel R. Bellis,[3] under Federal Rule of Civil Procedure 11 in the form of an award of reasonable attorney's fees and expenses for Metro's defense of this action. Attached to the Motion is an April 21, 2017 letter sent from Metro to Mr. Bellis, indicating Metro's intent to seek sanctions if the plaintiffs did not dismiss their claims against Metro, and attaching a draft of Metro's motion for sanctions. (Docket No. 33-1.)

Also on May 26, 2017, the CSX Defendants and BITCO filed a joint stipulation to the dismissal of BITCO's claims against the CSX Defendants based on lack of jurisdiction. (Docket No. 35.) BITCO states that it is not seeking any relief from the CSX Defendants in this action.[4]

---

[3] Metro's Motion for Sanctions and its accompanying Memorandum both open with language indicating that Metro is seeking sanctions against the *plaintiffs* themselves rather than their counsel. (Docket No. 33, p.1; Docket No. 34, p. 1.) These documents both later clarify, however, that the sanctions are sought against the plaintiffs' counsel, rather than the plaintiffs. Indeed, under Rule 11(c)(5), monetary sanctions, such as attorney's fees, cannot be awarded "against a represented party for violating Rule 11(b)(2)"; *see also Dearborn Street Bldg. Assocs. LLC v. Huntignton Nat'l Bank*, 411 F.App'x 847, 852 (6th Cir. 2011) (no sanctions can be issued against a represented party based on the frivolousness of the party's legal position). Accordingly, the court considers Metro's motion to be one seeking sanctions solely against Mr. Bellis.

[4] BITCO does not concede its right to intervene in the plaintiffs' claims against the other defendants in this action.

The plaintiffs have not responded to any of the five pending motions to dismiss, and the deadline has now long since passed. Moreover, Mr. Bellis has not responded to Metro's Motion for Sanctions, and the deadline for doing so has also now passed.

There has been no challenge to the claims against Mr. Emmanuel and Meridia in this Action but it appears from the record that these defendants have not yet been served.

## ANALYSIS

According to local Rule 7.01(b), failure to respond a motion to dismiss indicates a lack of opposition. District courts can construe any arguments against an unopposed motion to dismiss as having been waived. *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citing *Resnick v. Patton*, 258 F. App'x 789, 790-91, n.1 (6th Cir. 2007)). Moreover, the pending motions raise meritorious grounds for dismissal.[5] Accordingly, the court will summarily grant the pending motions to dismiss and dismiss the claims against the Jamison Defendants, the CSX Defendants, Berkley, and Metro.

Turning to Metro's Motion for Sanctions, Rule 11(b) provides that a pleading is a certification to the court by the pleading party's counsel that

> (1) it is not being presented for any improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[5] The court notes, however, that the only ground raised for dismissal of the state law claims against CSXT is the lack of subject matter jurisdiction. In particular, the CSX Defendants argue that there is no diversity jurisdiction, presumably referencing the fact that the Jamison Defendants and Metro are residents of Tennessee, as are the plaintiffs. Because this opinion dismisses the claims against the Jamison Defendants and Metro on other grounds, diversity jurisdiction could potentially apply to state law claims against CSXT. Because the plaintiffs have not opposed the CSX Defendants' motion, however, nor indicated any willingness to proceed against CSXT in the Middle District of Tennessee once the other claims discussed in this motion are dismissed, the court will dismiss the state law claims against CSXT at this time.

>  (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>  (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Under Rule 11(c)(1), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated [Rule 11(b)] or is responsible for the violation." Such a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The district courts are given "considerable discretion" in determining whether sanctions should be issued under Rule 11. *Indah v. U.S. S.E.C.*, 661 F.3d 914, 928 (6th Cir. 2011).

Metro argues that sanctions should be imposed on the plaintiffs' counsel, Mr. Bellis, for "filing claims that have no legal merit," since "the Complaint does not contain a single factual allegation or any alleged theory of liability" with respect to Metro. (Docket No. 34, p. 1.) The court interprets this motion for sanctions to be brought pursuant to Rule 11(b)(2), as there is no basis for finding that the plaintiffs or Mr. Bellis violated any other subsection of Rule 11(b). There is no evidence in the record that the plaintiffs filed the claims against Metro for any improper purpose or that there are any factual contentions that lack evidentiary support. Metro's position in both its Motion to Dismiss and in its Motion for Sanctions is solely that the plaintiffs' claims against it are frivolous because they are wholly unsupported by the allegations in the Complaint and, therefore, Mr. Bellis should be ordered to pay Metro's reasonable attorney's fees.

The court agrees that the Complaint is devoid of any meritorious basis for claims against Metro. Moreover, the plaintiffs' counsel has not bothered to oppose Metro's Motion to Dismiss or Motion for Sanctions, despite evidence that Metro has communicated its position to Mr. Bellis

and has also indicated its intent to seek sanctions under Rule 11. The court finds that Mr. Bellis has clearly not acted reasonably. Metro was named as a defendant, despite the fact that the Complaint is wholly devoid of any allegations linking Metro to this action. Moreover, when given notice of Metro's position, the plaintiffs have neither offered any defense for including Metro nor sought to amend the pleadings or stipulate to the dismissal of the claims against Metro. Rather, Mr. Bellis has allowed this action to proceed against Metro at Metro's expense and without any active participation by the plaintiffs or Mr. Bellis.

At first blush, the fact that this action has only recently commenced, that the litigation has not yet advanced to the discovery phase, and that the claims against Metro will be dismissed as of this Order, might suggest that there has been a limited burden on Metro in defending this suit and, therefore, that sanctions are unwarranted. However, even the limited involvement by Metro in this litigation has a real cost, albeit perhaps not a relatively great one, and Metro should not be forced to pay for the unreasonable actions of the plaintiffs' counsel. The fact that Metro has had a limited burden in defending this action also means that reasonable attorneys' fees and expenses for its defense will be likewise limited. And, it is only these attorneys' fees and expenses that Metro is seeking to recover in sanctions.

Not only is the argument for awarding the requested sanctions well supported by Rule 11 but, moreover, Sixth Circuit precedent indicates that the court would abuse its discretion if it were to deny the sanctions. *See Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400-02 (6th Cir. 2009) (holding that the district court abused its discretion by not awarding full reasonable attorney's fees as sanctions against an attorney to deter the pursuit of frivolous claims); *see also Merritt v. Int'l Assoc. of Machinists and Aerospace Workers*, 613 F.3d 609, 629 (6th Cir. 2010) (holding that sanctions are appropriate against an attorney who did not "adequately research the

9

factual basis for the claims asserted in the complaint at the time of filing."). Accordingly, the court finds that awarding the requested attorney's fees and expenses is appropriate. Denying Metro's Motion for Sanctions would be an abdication of the court's responsibility to deter the future filing of these sorts of frivolous claims. For these reasons, the court will grant Metro's Motion for Sanctions and order Mr. Bellis to pay Metro's reasonable attorneys' fees and expenses in defending this action.

Finally, with respect to remaining defendants, Mr. Emmanuel and Meridia, there is no documentation in the record that the plaintiffs have timely served them with a summons and the Complaint to initiate this action. According to the Federal Rules of Civil Procedure:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Complaint was filed on January 27, 2017, meaning that such service should have been completed more than two months ago, and the court may now dismiss the claims against these defendants absent good cause shown. Accordingly, the court will order the plaintiffs to show cause why these claims should not be dismissed.

## **CONCLUSION**

For the foregoing reasons, the pending Motions to Dismiss (Docket Nos. 16, 18, 24, 26, 28) are hereby **GRANTED,** and the claims against the Jamison Defendants, the CSX Defendants, Berkley, and Metro are **DISMISSED WITHOUT PREJUDICE**. In addition, Metro's Motion for Sanctions (Docket No. 33) is hereby **GRANTED,** and it is **ORDERED** that counsel for the plaintiffs, Joel R. Bellis, shall pay Metro's reasonable attorney's fees and expenses in connection with this matter. Metro shall file a motion enumerating its requested

attorneys' fees and expenses by July 3, 2017, to which Mr. Bellis shall file a Response by July 24, 2017.  It is further **ORDERED** that, by July 7, 2017, the plaintiffs shall make filings in the record of the case that **SHOW CAUSE** why their claims against Mr. Emmanuel and Meridia should not be dismissed for failure to timely serve them with a summons and the Complaint.

It is so **ORDERED**.

Enter this 22nd day of June 2017.

                                                                                    _____
                                                                                    ALETA A. TRAUGER
                                                                                    United States District Court